* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction of the parties and of the subject matter herein.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties. *Page 2 
3. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act
4. On all relevant dates, an employee-employer relationship existed between plaintiff-employee and defendant-employer.
5. On all relevant dates, defendant-employer was insured for workers' compensation coverage by Key Risk Insurance Company.
6. Plaintiff's average weekly wage will be determined by an Industrial Commission Form 22 Wage Chart.
7. Subsequent to the hearing before the Deputy Commissioner, the parties submitted the following:
 a. A Packet of Various Stipulated Documents which contained a Pre-Trial Agreement, Medical Records, an Ergonomic Report, Photographs and a Transcript of Plaintiff's Recorded Statement, and which is admitted into the record, and marked as Stipulated Exhibit (1) and;
 b. An Affidavit From John Russell with accompanying Wage Records, which is admitted into the record, and marked as Stipulated Exhibit (2).
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was fifty-five (55) years of age, with her date of birth being 2 October 1950. Plaintiff is a high school graduate and has taken a few courses at a community college. *Page 3 
2. Defendant-employer is a semi-private business that provides leisure and golf services to the general public and private members, with the members totaling less than three hundred (300). Plaintiff began her employment with defendant-employer in 1997 as bartender and cashier at the golf course snack bar in the clubhouse. In that capacity, plaintiff's duties required her to wait on customers, change kegs of beer and soft-drink containers, stock coolers at the bar and in the storage room, count money, make and serve drinks, open bottles and cans, clean and to carry crates of beverages. In 2002 or 2003, plaintiff also assumed the ordering duties for the snack bar, which required clerical type work.
3. Defendant-employer has two snack bar shifts, one from 6:00 a.m. to 2:00 p.m. and from noon to closing. Generally one person works each shift with a mid-day overlap designed to account for the lunchtime period. Plaintiff worked varied hours leading up to July 12, 2005 based upon the daily and seasonal needs of the club. Plaintiff generally worked no more than thirty to forty (30-40) hours per week.
4. Prior to the present claim, plaintiff had not experienced any medical problems with her hands. Plaintiff began experiencing pain and numbness in both of her hands that gradually became worse over time, eventually progressing to the point that she sought medical attention at the Emergency Room of Onlsow Memorial Hospital on July 11, 2005. At that facility, it was noted that plaintiff had a small ossicular density adjacent to the ulnar styloid, and that she probably had chronic avulsion.
5. On July 12, 2005, plaintiff sought additional treatment from Physician's Assistant Stephen Free at Atlantic Orthopedics. P.A. Free diagnosed plaintiff as having bilateral lateral epicondylitis (tennis elbow) and tendonitis of the left wrist. For these conditions, plaintiff was prescribed anti-inflammatory medications, given a brace and medically excused from work for *Page 4 
one week. Thereafter, plaintiff was to return to work with the restriction of no significant use of the left hand and wrist and lifting no more than ten (10) pounds.
6. After her examination and diagnosis on July 12, 2005, plaintiff notified her supervisors, including Mr. John Russell, that she was experiencing problems with her left hand and would not return to work until being released by her physician. Plaintiff did not, however, relate her symptoms to her work at that time. Subsequent to July 12, 2005, plaintiff elected to cease working behind the bar and thereafter worked sporadic hours performing product ordering work and hostessing for defendant-employer.
7. On July 19, 2005, plaintiff returned to Atlantic Orthopedics for a follow-up examination that focused on the possibility that a neck condition might be the cause of the problems in her hands. At this appointment, plaintiff was instructed to remain out of work for two additional weeks and to continue with her medications and exercises. On August 2, 2005, P.A. Free noted that plaintiff's condition had improved, but also continued to restrict her work activities.
8. On August 16, 2005, P.A. Free noted that plaintiff had tenderness over the first carpal tunnel of her left wrist and recommended that she continue to wear her brace. Additionally, plaintiff was referred to physical therapy and her work restrictions were again continued. As of September 7, 2005, P.A. Free had virtually ruled out plaintiff's cervical spine as a cause of her symptoms and therefore recommended an EMG nerve conduction study and referred her to Dr. Richard Bahner, a hand specialist.
9. Plaintiff was first examined by Dr. Bahner on September 26, 2005, at which time he ordered an EMG and nerve conduction studies of plaintiff's upper extremities. These diagnostic procedures were performed by Dr. Francis Pecoraro. Following these procedures, Dr. *Page 5 
Bahner diagnosed plaintiff as having left carpal tunnel syndrome and left wrist de Querviain's tenosynovitis. Dr. Bahner's records document that plaintiff has reported experiencing pain in her right hand, but that no formal diagnosis regarding her right hand had been made.
10. Dr. Bahner has repeatedly recommended that plaintiff undergo a left carpal tunnel syndrome release surgery, which plaintiff has continued to decline. At the hearing before the Deputy Commissioner, plaintiff testified that she has not undergone the surgery because her private insurance deductible is prohibitively high.
11. On December 29, 2005, Dr. Bahner noted that plaintiff had no activity or work restrictions, but that pinching or heavy lifting may aggravate her pain. Until the hearing date, plaintiff had not informed defendant-employer that she had been released to work without restrictions by her treating orthopedic specialist Dr. Bahner.
12. On April 6, 2006, Dr. Bahner completed a medical questionnaire form on which he noted that he could not opine with medical certainty that plaintiff's work with defendant-employer caused her left wrist carpal tunnel syndrome or left de Quervain's tenosynovitis. At his deposition, Dr. Bahner testified that plaintiff's work for defendant-employer could have aggravated her underlying left wrist tendonitis, but reiterated his opinion that plaintiff's work for defendant-employer did not cause her left carpal tunnel syndrome or her left de Quervain's tenosynovitis.
13. Aside from performing diagnostic procedures in September 2005, Dr. Pecoraro also examined plaintiff on October 14, 2005 and June 22, 2006. During the course of his examinations, Dr. Pecoraro diagnosed plaintiff as having left median sensory neuropathy and noted that sensory neuropathy of the upper extremities can be caused by an entrapment of some type secondary to repetitive use. *Page 6 
14. On his medical questionnaire form, Dr. Pecoraro noted that repetitive motion of the wrist can lead to or cause carpal tunnel syndrome. Additionally, at his deposition, Dr. Pecoraro gave some generalized opinions regarding increased risk. However, Dr. Pecoraro testified that his opinions were based on his concept of bartending in the traditional sense on a very busy basis and that he had only taken a cursory history from plaintiff.
15 Ergonomics Consultant Al Gorrod offered testimony that based upon his observations of plaintiff's job and Ergonomic Job Analysis Report that cumulative trauma disorders are not characteristic or peculiar to plaintiff's work with defendant-employer. Additionally, Mr. Gorrod testified that plaintiff's job with defendant-employer did not expose her to an increased risk of developing her left hand conditions as opposed to members of the general public not so employed.
16. Based upon the totality of the credible lay and medical evidence of record, the Full Commission gives greater weight to the opinions of Dr. Bahner as opposed to those of Dr. Pecoraro, whose opinions are speculative in nature.
17. Based upon the totality of the credible lay and medical evidence of record, the Full Commission finds that plaintiff's employment with defendant-employer did not cause nor significantly contribute to her left carpal tunnel syndrome or left de Quervain's tenosynovitis. Additionally, plaintiff's employment with defendant-employer did not expose her to an increased risk of developing that condition.
18. On all relevant dates, plaintiff's average weekly wage was $242.75, which yields a compensation rate of $161.83.
 * * * * * * * * * * * *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On all relevant dates, plaintiff's average weekly wage was $242.75, which yields a compensation rate of $161.83. N.C. Gen. Stat. § 97-2(5).
2. Based upon the totality of the credible evidence of record, plaintiff's employment with defendant-employer did not cause nor significantly contribute to her carpal tunnel syndrome or her left de Quervain's tenosynovitis. N.C. Gen. Stat. § 97-53(31). Additionally, plaintiff's employment with defendant-employer did not expose her to an increased risk of developing that condition. Id.
3. Because plaintiff's conditions are not compensable occupational diseases, she is not entitled to indemnity or medical compensation.Id.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Under the law, plaintiff's claim for workers' compensation benefits must be, and is hereby, DENIED.
2. Each party shall bear its own costs.
 This the 21st day of August, 2007. *Page 8 
 S/______________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
S/______________________ CHRISTOPHER SCOTT COMMISSIONER
S/______________________ PAMELA T. YOUNG COMMISSIONER *Page 1